Good morning, your honors. May it please the court. My name is Ben Petrie. I'm here on behalf of Dowbuilt. I respectfully request to reserve two minutes for rebuttal, but I'll keep my eye on the clock. This appeal primarily turns on a narrow but critical error by the district court. The district court denied Dowbuilt's motion to compel arbitration on the premise that the arbitrator had already decided arbitrability of SJH's claims against Dowbuilt. He did not. That's clear on the face of the order as well as the record, and even more apparent when you view everything in context leading up to that. The arbitration had been pending for over a year, and the two-week final hearing was just weeks away when SJH filed a series of motions and an amended counterclaim. The Rule 9 motion, which attempted to carve out certain claims against Dowbuilt Inc., was filed less than two months before the final hearing, and when that was rejected, SJH filed an amended counterclaim in which Dowbuilt was named as a third-party defendant. Both of those were rejected on grounds that they were untimely and as a matter of case management. In rejecting those, the arbitrator noted a couple critical facts. One, well, critical concessions, I should say, on behalf of SJH. One, that the parties had always viewed Dowbuilt and SDI as interchangeable. And two, that SJH had confirmed that it was already pursuing counterclaims against Dowbuilt based upon its original counterclaims filed on February 27, 2024. On SJH's motion for clarification on striking the amended counterclaims, the arbitrator ordered that SJH could pursue its original counterclaims submitted on February 27, 2024, and proceed against both entities, and it only clarified that SJH was not required to pursue its new counterclaims in that arbitration. That phrase in that order on the motion for clarification is absolutely critical, because it shows that he was not deciding arbitrability completely. He wasn't deciding arbitrability at all. All he was saying was, as a procedural matter, they could not pursue those counterclaims in this arbitration. But, counsel, on the original orders, I think in the Rule 9, to pursue the counterclaims, let's say there's some ambiguity, though, as to the orders whether or not the arbitrator was actually issuing a ruling as to arbitrability. Why doesn't the last order regarding the motion for clarification sort of settle this? You said, you started by saying it's clear on its face that there is not a decision as to arbitrability. I have it in front of me, and I don't see here where the arbitrator is saying I'm not making such a ruling. In fact, fair rating may be quite the opposite. So help me understand how it's clear on its face from this order that the arbitrator is not making a determination on arbitrability. The arbitrator, there was no analysis of arbitrability because it wasn't brought before the arbitrator on that motion for clarification. The district court made the error of focusing on really two sentences in that order. One was in the second paragraph of that order, in which he simply made the observation that there was no agreement between SJH and Dow Bill, Inc. And then on the last one, the last sentence, is the reference to they can go ahead and pursue a claim in a court of competent jurisdiction. But what you have to do is that third paragraph is critical to this analysis. That third paragraph, the arbitrator wrote, well, allowing the February 27, 2024 Congress to proceed against both SDI LLC and Dow Bill. He was acknowledging that in the hearing that at that point was two weeks from that, from the date of that order, right? Because that was issued on January 17th. We were scheduled to go to the two-week final hearing on February 3rd. So he's saying in that, you know, that I'm allowing them to proceed against both, well, they were counterclaims, right? But against both SDI and Dow Bill. Yeah, but he wasn't allowing them to proceed on all their counterclaims. Isn't that the problem? As I understand it, they said we want to bring these counterclaims now against Dow Bill. We now have understanding that they are different from SDI. And the arbitrator said, no, you can't do that. And so we're two weeks out from arbitration. It may make sense I'll allow you to go forward on your original claims and those that maybe use those two entities interchangeably. But you can't do that now on these counterclaims you brought against Dow Bill. And those tend to be separate. So. Right. That goes back to that critical phrase, in this arbitration. Because he could not allow them to pursue those counterclaims in that arbitration because we were going to hear. Yeah, but he also says, but those counterclaims, you can't pursue them here. You know where you need to do it? A court of competent jurisdiction. But in doing so, he made no rule in his arbitrability because we can file a motion to compel once they file a separate case. And in fact, so that was decided on January 17th. Well, didn't the court say, it said, it doesn't mandate. You know, the previous, the existing counterclaims against Dow Bill does not mandate that SJS is forced to arbitrate its other claims against Dow Bill in this arbitration. So what does that mean? Yeah, right. Isn't that clear though? Yeah. I mean, I think it is clear. Well, so what is it in that sentence? It is him allowing them to pursue the claims and move forward with claims against both SJS and Dow Bill in the upcoming years. The existing claims. In two weeks, right? The existing claims, and anything else is not arbitrable. No, that's so, let's actually look at that paragraph as a whole. It doesn't mandate that they're forced to arbitrate their other claims against Dow Bill in this arbitration, period. Right, in this arbitration. He's not precluding arbitration completely. He's not ruling that they can't be subject to arbitration. He's saying you can't rule it in this arbitration. And to understand, to even put more context, that that was issued on January 17th. On January 19th, they filed their complaint in district court. On January 21st, the party stipulated to vacate in the hearing and stay in the arbitration. And the arbitrator granted that. If he had determined arbitrability, why would he have ever granted a motion to vacate the hearing and stay in the arbitration? And I apologize that that order is not in the record, and I take responsibility for that. But I do address it in my declaration. Because what he said was, what we discussed was, we're going to file a motion to compel in district court based upon this complaint. And so we are asking, in order that we don't have parallel pieces of arbitration litigation moving forward, we're going to ask that we stay this matter. SJH agreed to that. If SJH had filed that arbitrability. I'm sorry, counsel. What does that tell us at all? Maybe because we don't have the order, I may be missing this. But parties go to the arbitrator and say, well, there's now these claims filed in district court. And we're going to litigate whether or not they're going to proceed in that court. So we want to stay this arbitration. We don't want parallel proceedings. And the arbitrator is saying, if that's what you're asking me, sure, let's stay it. How does that inform our analysis here? Because why would he stay? Why would he vacate the hearing and stay in the proceedings? Because the parties asked him to. But if he had already determined arbitrability, I think he would have said, I've already determined they're not arbitrable. There's this group of claims here against SDI and Dalbell. And that's what he's staying, right? So he's not talking at all about these other claims that are now in district court. I guess that's what I'm not tracking on. Well, no, because he said in his order, he said, I understand that if the motion to compel is granted, then we're going to consolidate these actions and move forward together. So, I mean, he anticipated that the motion to compel, you know, he anticipated that being granted. And the parties proceeding in one arbitration. Okay, again, I haven't read the order. That seems maybe like a stretch of a reading to say, well, I'm going to get out ahead of the U.S. district judge and say that that motion to compel is going to be granted. And when it is, it would be more efficient for us to hear all these claims together. I mean, it would just make sense to me if you're an arbitrator and the parties come to you and say, we want to stay it so that we can go litigate over here. And we don't, you know, that the arbitrator would say, well, I don't know what the district judge is going to decide. But sure, if that's what you're asking me to do, that seems like a plausible, reasonable position. We, I stand on my, you know, on the argument that it wouldn't make any sense if he knew that he had already decided arbitrability to go ahead and proceed. We would have gone forward with the hearing two weeks from there. And that's the thing, the context in which this all happened, I think is important to keep in mind as you're reading the arbitrator's order. Counsel, let me ask you about that. What entitles or subjects your client to the opportunity at arbitration in this context? Well, there's a concession that they already have claims against Dow Belt, that they're pursuing those in the arbitration. There's a concession by whom? By SGH. There's a concession by them that they have claims against Dow Belt. That they are actively pursuing counterclaims against Dow Belt in the pending arbitration. Right. The one that is currently staying. There's also the concession that they've treated the parties interchangeably. Well, I'm looking at the last sentence of that clarification order, and I don't think I read that earlier. The last sentence is the arbitrator ordered that the SGH change its rights to pursue claims against Dow Belt that were not brought in its February 27, 2024 counterclaim in a court of competent jurisdiction. Why doesn't that answer the question? He's responding. The motion for clarification did not address arbitrability at all. It said, Mr. Arbitrator, we want confirmation that our claims are not precluded moving forward, and two, that we get to pursue these elsewhere. That's what the motion for clarification requested. So he was simply responding to that. Arbitrability was never addressed in the motion for clarification. To follow up to my question, you talk about the fact that there had been some counterclaims and proceedings in this arbitration that involved your client. Your client was never formally joined as a party to the arbitration. Isn't that right? It was not named, but that goes back to SGH's concession that they were treating the parties interchangeably. And what is the evidence of their concession? Well, they stated that during the hearing, and the arbitrator noted that in the Rule 9, on the order on the Rule 9 motion. The Rule 9 motion was filed. There was a hearing shortly thereafter, and during that hearing, they conceded that they viewed the parties as interchangeable, and that they were already pursuing counterclaims against Dow Belt, Inc. And they, my friends on the other side have made the argument, well, you know, we just learned of Dow Belt, Inc. in December of 2024. But I would point the court to the record, page 530 in the record, in which they explain in 2023 the understanding of the relationship between Dow Belt and SDI. And that goes to that concept of them treating them interchangeably. It started before the project even started. They treated them as interchangeable throughout the entire course of the construction project, as well as through the arbitration. I see I have two minutes left. I'd like to reserve that for rebuttal, please. It's fine. Thank you, Counsel. Mr. Adams? May it please the Court, William Adams for SJH, the owner of the properties in the underlying dispute. Arbitrability was both submitted to the arbitrator and resolved by the arbitrator. To determine the submission issue, you need to look no further than Dow Belt's own submission to the arbitrator. If you look at pages 468 to 469, which is their opposition to the motion to clarify, it's actually identical to the lead argument that Dow Belt makes to the district court in seeking to compel arbitration. So they presented arbitrability, SJH did too, and I'll get to that in a moment, but they joined issue with SJH on the arbitrability issue. At page 468 of the record, Dow Belt says, SJH's proposed claims against Dow Belt, Inc. are clearly within the scope of the contract's arbitration provision. This provision clearly encompasses SJH's proposed claims against Dow Belt, Inc. as a matter of Wyoming law. It then continues to discuss Wyoming case law, including the Jackson State Bank case, which the arbitrator then distinguishes in the clarification order. This submission was not just by SDI, it was by Dow Belt, Inc., which had injected itself into the arbitration. We know that at page A460 and A472, where counsel is saying that the argument is on behalf of Dow Belt, Inc. SJH likewise raised the issue of arbitrability. This whole process started with the Rule 9 motion, where my client was trying to get confirmation that these claims against these tort claims against Dow Belt, Inc. were not part of the arbitration, were not arbitrable, and could be brought in a court of competent jurisdiction. The Rule 9 motion is at page 376 of the record, and SJH repeats these arguments in seeking clarification. In fact, Dow Belt says that the clarification motion is just a motion for reconsideration of the original Rule 9 motion. They say that at page A46, so A464 of the record. So we have SJH raising arbitrability, Dow Belt, Inc. joining issue on the issue of arbitrability, and then we get to the clarification order. That's the key to the appeal, and that is on page A267. What was SJH seeking clarification about? Was it arbitrability, or was it, hey, we have these counterclaims. You said they're untimely. It was that it could pursue the claims, the non-contract claims against Dow Belt, Inc. in a court of competent jurisdiction. That is an issue of arbitrability. Certainly, and then the arbitrator decides that issue. The arbitrator decides, has four key rulings on page A267. We talked about two of them earlier, but I'll go through all four of them with the Court's indulgence. The first thing that the arbitrator says is there is no evidence that has been presented that Dow Belt, Inc. was a party to an arbitration agreement with SJH. That's about arbitrability. The second thing the arbitrator says is that there is no arbitration agreement between Dow Belt, Inc. and SJH. The third thing, which is in the paragraph we spent a lot of time in colloquy with my friend on the other side about, that says that SJH's existing contract claims do not mandate that SJH is forced to arbitrate in its other claims against Dow Belt, Inc. in this arbitration or be precluded from bringing them, you know, asserting those claims at all. That implicates arbitration and scope, arbitrability and the scope of that particular arbitration. And then the fourth and final thing, he caches it out in the final paragraph, and he says, just as SJH requested, SJH retains its right to pursue claims against Dow Belt, Inc. that were not brought in its February 27, 2004 counterclaims in a court of competent jurisdiction. That's a ruling on arbitrability, and that ruling was for the arbitrator to make. There's no dispute that there is a clear and unmistakable delegation of the arbitrability issue to the arbitrators in the contract in which Dow Belt is trying to invoke. They incorporate the AAA rules. This Court has been very clear in Gold Group, Dish Network, Belknap, that that's sufficient delegation via incorporation of the rules. And the only way that this Court could set aside the arbitrator's determination of arbitrability was if there was a manifest disregard of the law. That's from this Court's decision in Dish Network. And Dow Belt, Inc. doesn't suggest that the arbitrator's determination was a manifest disregard of the law, and of course it was not. And respectfully, we think that's the end of the inquiry. Any other issues of arbitrability, whether it's consent or the equitable estoppel argument, those issues were for the arbitrator, but they didn't raise them. And there's no basis that I'm aware of for the district, for any federal court to be addressing those arbitrability issues. You don't get a second bite at the apple. And so unless there are any further questions from the Court. Counsel, do I have the situation correct that if the district court would have granted the motion to compel arbitration, and the arbitrator has already said, you can't bring these counterclaims against Dow Belt, that it effectively leaves your client without a forum to adjudicate those claims? I think that's right. And that's what the district court ruled in rejecting the equitable estoppel argument. The arbitrator had concluded that these, the non-contract claims were untimely in the context of that arbitration, and he struck them, the arbitrator did. And so to then send it back to the arbitrator who has ruled that these claims don't belong in the arbitration really sets up a, I'm not sure exactly what would happen then, right? I mean, there's a great uncertainty, and sort of as the district court explained, a great sort of unfairness to my client to be put in that circumstance. But the district, but the arbitrator was very clear that they could be pursued in a court of competent jurisdiction, and my client therefore filed its complaint in the district court. I know you may not want to travel down this path at all, but is equitable estoppel even recognized under Wyoming law in this context? Your Honor, there is no case from the Wyoming Supreme Court or, you know, adopting or considering equitable estoppel in this context. Dow Belt, frankly, didn't give the tools to this court to predict what the Wyoming Supreme Court would do. And so I don't think that they have carried their burden. Even if you were to get there, of course, we don't think you should get there. I don't think they've carried their burden to show that the Wyoming Supreme Court would accept. Are you suggesting, then, that waiver may come into play? I think it's either a burden, or either they didn't satisfy their burden, or they waived it by not adequately developing the argument, either in the district court or in this court. But, again, those are issues that, frankly, would be for the arbitrator if they had made it to the arbitrator, because equitable estoppel, of course, is an issue of arbitrability. The delegation clause means that it should be for the arbitrator to resolve that issue. I respectfully suggest there's no reason for this court to reach that issue. If there are no further questions, we respectfully ask the court to affirm. Thank you, counsel.  Your Honor, on the issue of equitable estoppel, we can see that the Wyoming Supreme Court has not addressed that. But, obviously, the Tenth Circuit has. We would ask this court to follow Reeves. Yeah, but Reeves is Oklahoma law. It is. And we acknowledge that. But that rationale would apply. It's been adopted by numerous circuits, as explained in Reeves. And we would ask this court to apply the Reeves analysis here. That, obviously, equitable estoppel will bar the signatory to an arbitration agreement from avoiding arbitration with a non-signatory. And we focus, as you saw in our briefs, on the second possibility. If plaintiffs' claims raise allegations of substantially interdependent and concerted misconduct by both the non-signatory and the signatory to a contract, when you look at their claims in the complaint in the district court, they're all tied to the contract, right? They talk about payment issues. They talk about the use of the money. They talk about the audit, the audit that occurred. All of those are tied to the contract. And, for that reason, equitable estoppel should apply. I think it's also important to note that, going back to that third paragraph, at the very least, we've asked for a reversal of the denial of the motion compelled. At the very least, I think remanding to the arbitrator to say whether or not he issued on, he ruled on the issue of arbitrability based on these circumstances. While it hasn't been used in this context, I think remand makes sense because it goes to ambiguity within the order, which I think is evident based upon the discussion that we've had today. And it helps give the parties the benefit of the bargain in terms of entering into a contract with an arbitration agreement. So I see that my time is up, unless the panel has any questions. Thank you, counsel. Thank you. Thanks to both of you. We appreciate your arguments today. They've been helpful. And we will submit the case, and counsel are excused.